Diana COLLAZO–SANTIAGO, Plaintiff,

v.

TOYOTA MOTOR CORPORATION,
Defendant.

Civil No. 95–1091 (DRD).

United States District Court,
D. Puerto Rico.

Jan. 31, 1997.

See also, 937 F.Supp. 134.

Jorge M. Suro–Ballester, San Juan, PR, for plaintiff.

Antonio Gnocchi–Franco, Hato Rey, PR, for defendant.

### OPINION AND ORDER

DOMINGUEZ, District Judge.

After a short trial, on August 2, 1996, the jury returned a verdict finding defendant Toyota Motor Corporation strictly liable, under the risk/utility balancing test, for plaintiff Diana Collazo–Santiago's injuries. Damages were set at thirty thousand dollars ($30,000). The Court entered judgment for Ms. Collazo on August 14, 1996.

Soon afterwards, Toyota filed a motion, characterized as both a renewed motion under Fed.R.Civ.P. 50(b) for judgment as a matter of law and as a motion to alter and/or amend the judgment under Fed.R.Civ.P. 59, setting forth seven different arguments as grounds to reopen the earlier judgment and direct the entry of judgment in its favor as a matter of law (Docket No. 40).[1] Toyota contends *first*, that "the plaintiff's action is preempted by the comprehensive federal regulations governing the design feature she alleges to be 'defective;'" *second*, that "the plaintiff failed to establish a prima facie case of causation under the risk-utility balancing test"; *third*, that "the verdict in this case is contrary to the weight of the evidence due to the fact that defendant proved on the risk-utility balancing test that the benefits of the design outweigh, by far, any possible risks"; *fourth*, that "this court's ruling denying defendant's motion to dismiss based on spoliation of evidence crippled [Toyota's] defense in this case"; *fifth*, that "the ruling of the court allowing the use of the second prong of the *Barker*[2] test in this case is contrary to the law of Puerto Rico and highly prejudicial to defendant"; *sixth*, that "the case should be dismissed for lack of subject matter jurisdiction"; and *seventh*, that "the judgment should be amended pursuant to Rule 59(e) to include the deductions established by Law Number 138 known as the Automobile Accident Compensation Act of Puerto Rico (ACAA)."

### I. Standard for Entering Judgment as a Matter of Law

The rule applicable to this motion is Rule 50, which provides, in pertinent part, that:

> [i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1). As a general matter, the Advisory Committee Notes to the 1991 amendments to Fed.R.Civ.P. 50 state that "[a]ction taken under [Rule 50] is not an intrusion on any responsibility for factual determinations conferred on the jury by the Seventh Amendment," and that the amendments "[aim] to facilitate the exercise by the court of its responsibility to assure the fidelity of its judgment to the controlling law, a responsibility imposed by the Due Process Clause of the Fifth Amendment." Fed. R.Civ.P. 50 advisory committee notes.

Correspondingly, in evaluating a motion for judgment as a matter of law, "[t]he evidence and the inferences reasonably to be drawn therefrom are considered in the light most favorable to the non-movant. . . . A verdict may be directed only if the evidence, viewed from this perspective, 'would not permit a reasonable jury to find in favor of the plaintiff[ ] on any permissible claim or theory.'" *Andrade v. Jamestown Housing Authority*, 82 F.3d 1179, 1186 (1st Cir.1996) (citing *Murray v. Ross–Dove Co.*, 5 F.3d 573, 576 (1st Cir.1993)). The Court notes that even though "[i]f there is *conflicting* testimony on a material issue, the court may not grant judgment as a matter of law," nevertheless "the jury is required to believe, and the judge may therefore accept as true on a motion, uncontradicted and unimpeached evidence from disinterested witnesses." 9A

---

1. The parties have also filed cross motions for the award of costs (Docket Nos. 38, 41).

2. *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 239–40, 573 P.2d 443, 457–58 (1978).

352

Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2527 at 282–83, 286 (1995) (emphasis added). Similarly, a reasonable jury may not base a finding of fact on a mere scintilla of evidence; something more is required. *Id.* § 2524, at 252–53.

## II. Analysis

As noted above, Toyota has challenged a number of the Court's decisions in this case, from the Court's ruling requiring the application of the *Barker* risk-utility test, to the Court's particular application of that test, to the Court's statements regarding the probability of finding a causal link between the air bag and Ms. Collazo's injuries. The Court will evaluate these arguments *seriatim*.

### A. First Objection: Preemption of Plaintiff's Tort Cause of Action by Federal Motor Vehicle Safety Standards

Defendant Toyota Motor Co. reiterates its argument that Federal Motor Vehicle Safety Standard 208 preempts any possible Puerto Rico tort law actions based on the allegedly defective design of the air bag. Toyota's arguments have already been considered and rejected, and therefore require at this point little more than a recapitulation of the reasons for their rejection.

■ The preemption provision at 49 U.S.C. § 30103(b)(1) provides, in pertinent part, that:

(b) **Preemption.**—(1) When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect

a standard applicable to the same aspect of performance of a motor vehicle ... only if the standard is identical to the standard prescribed under this chapter.

49 U.S.C.A. § 30103(b)(1) (1997) (boldface in original).[3] The Court notes that the preemption provision refers to standards of performance and not to the specific design of vehicle protection systems. "A performance standard establishes a test for a certain aspect of a vehicle's performance, without mandating how the vehicle should be designed to comply with the test." *Wood v. General Motors Corp.*, 865 F.2d 395, 416 (1st Cir. 1988). By requiring compliance with safety standards rather than imposing particular designs, Congress intended to give the manufacturers of motor vehicles free rein to design better safety systems. *Id.* at 416 n. 22 ("Congress preferred performance standards rather than design standards because 'performance standards are ... not intended or likely to stifle innovation in automotive design.' ") (Citations omitted).

■ That Congress allowed manufacturers leeway to come up with their own air bag designs does not mean, however, that Congress intended to exempt manufacturers from tort liability in *all* cases arising from faulty air bag designs, as evidenced by the "savings" clause at 49 U.S.C. § 30103(e):

(e) **Common law liability.**—Compliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law.

49 U.S.C.A. § 30103(e) (1997) (boldface in original).[4] *See Shipp v. General Motors*

---

3. Section 30103(b) was enacted pursuant to Pub.L. 103–272, § 1(e), 108 Stat. 943 (July 5, 1994), repealing and substituting the provisions of former 15 U.S.C.A. § 1392(d). The language of former Section 1392(d) provided, in pertinent part, that:

Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle ... any safety standard applicable to the same aspect of performance of such vehicle ... which is not identical to the Federal Standard.

Although this language differs slightly from that of Section 30103(b), there is no appreciable variation in the provision's substantive effect. The Revision Notes to Section 30103(b) indicate that the intention of Congress, in varying the language, was merely to clarify and simplify the text of the law.

4. The Supreme Court recently summarized the law of preemption in its opinion in *Barnett Bank of Marion County v. Nelson*, — U.S. —, — — —, 116 S.Ct. 1103, 1107–08, 134 L.Ed.2d 237 (1996). The Court wrote that

This question [of preemption] is basically one of congressional intent. Did Congress, in enacting the Federal Statute, intend to exercise

*Corp.,* 750 F.2d 418 (5th Cir.1985) (compliance with federal minimum safety standards does not exempt manufacturers from common law strict liability); *Sours v. General Motors Corp.,* 717 F.2d 1511, 1516–17 (6th Cir.1983) (same); *Dawson v. Chrysler Corp.,* 630 F.2d 950, 957–58 (3d Cir.1980) (same).

■ Admittedly, as a general matter "state damages awards based on tort liability *can* have a regulatory effect," and be impliedly preempted by Section 30103(b), when they conflict with federal laws and regulations. *Perry v. Mercedes Benz of North America, Inc.,* 957 F.2d 1257, 1265 (5th Cir. 1992) (emphasis added). *See Wood v. General Motors Corp.,* 865 F.2d 395, 412–14 (1st Cir.1988). Thus, when federal law gave manufacturers the choice whether or not to install air bag systems, a number of courts held that Section 208 implicitly preempted any state tort liability for a manufacturer's *failure to install* air bags. *See Montag v. Honda Motor Co.,* 75 F.3d 1414, 1417 (10th Cir.1996); *Taylor v. General Motors Corp.,* 875 F.2d 816, 826–28 (11th Cir.1989); *Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir.1989); *Wood v. General Motors Corp.,* 865 F.2d 395, 412–14.

■ However, as noted above, compliance with performance criteria does not immunize manufacturers from common law liability arising from any defects in the production or design of their passive restraint systems. Indeed, as one Federal Circuit Court of Appeals has stated, "it would not conflict with Congress' objectives and methods if [Mercedes Benz of North America, Inc.] were found *liable in tort* for failing to design its air bags to perform in a manner that effectively exceeds the federal minimum standards," because such liability does not conflict with federal law insofar as it "[does] not remove or require any particular choice, or otherwise frustrate 'flexibility' that the federal scheme provides." *Perry v. Mercedes*

*Benz,* 957 F.2d at 1264–65 (emphasis in original). *Cf. Wood v. General Motors Corp.,* 865 F.2d at 402 n. 10 ("We, of course, do not imply that section 1392(d)'s prohibition immunizes the manufacturer from liability for *defective design* of an air bag.") (emphasis added). Thus, to sum up, federal law preempts state tort liability only where such liability would be premised on the very performance standards mandated by federal law; conversely, where federal law allows a choice of design, any defects in the chosen design will be subject to state tort liability.

■ An air bag was installed in the 1994 Toyota Corolla that is the subject of this case. An air bag is defined by regulation as an inflatable restraint system that is activated in a crash. *See* 49 C.F.R. § 571.208 S4.1.5.1(b). Pursuant to S4.1.4.1, passenger cars manufactured on or after September 1, 1989, but before September 1, 1996, must comply with S4.1.2.1, which requires that the vehicle have a frontal/angular protection system that meets, "[a]t each front outboard designated seating position" "the frontal crash protection requirements of S5.1 by means that require no action by vehicle occupants." In turn, pursuant to S5.1, "[v]ehicles subject to S5.1 shall comply with either S5.1(a) or S5.1(b), or any combination thereof, at the manufacturer's option." Both options require that the manufacturer test the vehicle by:

> impact[ing] [the] vehicle traveling longitudinally forward at any speed, up to and including 30 mph, into a fixed collision barrier that is perpendicular to the line of travel of the vehicle, or at any angle up to 30 degrees in either direction from the perpendicular to the line of travel of the vehicle under the applicable conditions of S8.

49 C.F.R. § 571.208 S5.1(a)–(b).

The only difference between the options is in the injury criteria which a test dummy

---

its constitutionally delegated authority to set aside the laws of a State? ... Sometimes courts, when facing the pre-emption question, find language in the federal statute that reveals an explicit congressional intent to pre-empt state law.... More often, explicit pre-emption language does not appear, or does not directly answer the question. In that event, courts must consider whether the federal statute's

'structure and purpose,' or nonspecific statutory language, nonetheless reveal a clear, but implicit, pre-emptive intent.
—— U.S. ——, —— – ——, 116 S.Ct. 1103, 1107–08 (citations omitted). In the case at hand, the language of the statute reveals an explicit congressional intent not to preempt the application of state *tort laws* to motor vehicle safety and design.

specified at S8.1.8.1 and placed at each front outboard designated position must meet. For S5.1(a), the test dummy must meet the injury criteria set by S6.1.1, S6.1.2, S6.1.3, and S6.1.4; that is, the "[i]njury criteria for the Part 572, Subpart B, 50th Percentile Male Dummy." For S5.1(b), the test dummy must meet the injury criteria set by S6.2.1, S6.2.2, S6.2.3, S6.2.4, and S6.2.5; that is, the "[i]njury criteria for the Part 572, Subpart E, Hybrid III Test Dummy." The two sets of injury criteria are almost identical. Both S6.1.1 and S6.2.1 require that "[a]ll portions of the test dummy ... be contained within the outer surfaces of the vehicle passenger compartment throughout the test." Similarly, both S6.1.2 and S6.2.2 establish the maximum resultant acceleration at the center of gravity of the head by means of the same formula. Again, both S6.1.4 and S6.2.5 provide that "[t]he force transmitted axially through each upper leg shall not exceed 2250 pounds." The only difference between S6.1.3 and S6.2.3, both of which provide that the resultant acceleration at the center of gravity of the upper thorax shall not exceed 60g's, except for intervals whose cumulative duration is not more than 3 milliseconds, is that S6.2.3 establishes a specific method for calculating this resultant acceleration. The only substantial difference between the two sets of criteria is that S6.2.4 establishes an entirely new injury criterion: the compression deflection of the sternum relative to the spine, which shall not exceed 3 inches.

Toyota has argued that "[a]s evidenced by the regulations quoted above, the *design* [of air bags] is comprehensively regulated, even down to the force with which an air bag must deploy." [5] However, Toyota has failed to present evidence to corroborate this claim. Indeed, the regulations cited above do not regulate the design of air bags at all. Furthermore, after careful review of Standard 208, the Court finds no other performance criteria applicable to air bags, and certainly no design criteria. The only other regulations applicable to air bags are concerned with the proper warning labels that must be placed in a vehicle equipped with air bags. In this regard, the provisions applicable to air bags stand in stark contrast to the provisions applicable to seat belts, which are subject to minutely detailed *design* regulations. *See* 49 C.F.R. § 571.208 S7.1 and § 571.209.

Manufacturers are apparently free to choose any air bag design, as long as the design meets the performance criteria set forth above. Thus, there is no conflict between the provisions of Title 49 nor its implementing regulations, on the one hand, and tort liability for defective design, on the other, because such liability "[does] not remove or require any particular choice, or otherwise frustrate 'flexibility' that the federal scheme provides." *Perry v. Mercedes Benz,* 957 F.2d at 1264–65; 49 U.S.C.A. § 30103(e). In the case at hand, the plaintiff is not claiming that her car was defective for including an air bag or in any other way "alleging that the level of protection mandated by Standard 208 was the cause of the minor abrasions she suffered." Instead, she merely pointed out that her facial injuries were caused by an air bag designed by Toyota, and that those injuries would have been avoided had a better design been chosen. Because the burden of proof on the balance between the risks and benefits of the challenged design rested on the defendant,[6] Ms. Collazo did not really have to specify which specific aspects of the design were defective or how they could be improved. She did, however, suggest that perhaps the force with which the air bag deployed was excessive, or that the material from which air bags were made was too rough. Since those design features were chosen by the defendant and not mandated by law or regulation, the jury was free to find that they were defective. The Court therefore concludes that federal law does not preempt Ms. Collazo's claim that the design chosen by Toyota for its Toyota Corolla air bags is defective.

## B. Second Objection: Failure to Establish a *Prima Facie* Case of Causation

Toyota claims that "plaintiff failed to present any evidence linking her injury to

5. Docket No. 40 at 7.

6. *See Barker v. Lull Engineering Co.,* 20 Cal.3d 413, 143 Cal.Rptr. 225, 239–40, 573 P.2d 443,

457–58 (1978) (discussed more fully in the Court's Opinion and Order dated July 29, 1996 (Docket No. 29)).

defendant's product. That is to say, that the plaintiff has failed to show that the product, object of the instant case, caused the damages alleged. The plaintiff had to establish the case on a theory of probability and not possibility. Here, there was no evidence of probability."[7] Toyota further argued that:

[the] plaintiff did not introduce any documentary or expert testimonial evidence showing the cause of the alleged damages.

In Diana Collazo's direct testimony she never stated, nor much less proved, that the air bag impacted her face. She stated that during this multiple vehicle collision she felt a sting on her face, which she unsupportedly concluded was a result of the chemicals that came from the air bag.

On cross examination, she was effectively impeached by her previous testimony, during her deposition, in which the plaintiff testified that she could not state if the discomfort she felt on her face was due to an impact with the steering wheel nor could she say that it was due because she impacted the air bag.... Plaintiff further admitted in her cross examination that this accident happened so fast that it would be hard to explain....

Here, during the cross examination of the plaintiff's dermatologist, Dr. Jerry Charneco, he clearly testified that when plaintiff went to see him, two (2) days after the accident, what she had on her face were abrasions, which produced second degree friction burns on the cheek and chin. Therefore, an abrasion was the cause of the burn. Dr. Charneco, also, testified that he could not state that the air bag was the culprit of the plaintiff's skin abrasions.

Docket No. 40 at 12–13.[8]

The Court disagrees. As the defendant itself notes, the question is whether the evidence provided by the plaintiff was sufficient to *permit* a reasonable jury to conclude that the allegedly defectively designed air bag was the proximate cause of her injury. In her opposition to the defendant's post trial motion, the plaintiff indicates that she presented at trial the following evidence relating to the issue of causation:

1. At the time of the accident her car seat was in a normal position, neither far too [sic] forward nor far too [sic] back. Her feet could reach the brake and gas pedals.

2. At the time of the accident she was using the lap and shoulder seatbelt[s].

3. As a result of the accident she did not move.

4. After the accident she unbuckled the seatbelt and got out of the car.

5. During the accident she heard a sound and saw some smoke.

6. After the accident she felt a burning sensation in [sic] her face.

7. As a result of the accident her face did not hit the windshield, nor the steering wheel, nor any other area of the car.

8. She felt that her second degree facial burns were caused by the airbags.

9. Dr. Charneco testified (i) that he saw plaintiff two days after the accident, (ii) that he diagnosed abrasion or friction second degree burns on the left cheek, (iii) that they are not consistent with a blunt trauma because there was no hematoma.

10. Mr. Tiede, TMC's expert, testified that he did not have a single answer to the cause of the plaintiff's facial burns.

11. During his testimony as an adverse witness, Mr. Tiede admitted that the de-

---

7. Docket No. 40 at 9.

8. The defendant also complains that "this Honorable Court, upon ruling in its Opinion and Order of July 30, 1996 that the plaintiff was going to be able to establish causation because she was going to testify that she felt the airbag hit her face and abrade it, the Court stated: 'The plaintiff will personally testify that she felt the airbag hit her face and abrade it. This is sufficient to establish a prima facie case of causation.' The Court *a priori* passed on the credibility of the witness, which is contrary to the rule established by the First Circuit for cases such as the one at bar." Docket # 40 at 12.

The defendant obviously misunderstood the Court's statements. Having been led to believe that the plaintiff would so testify, the Court stated that such direct testimony would clearly suffice, as a matter of law, to establish a *prima facie* case of causation. But the Court's statement emphatically did *not* mean that the Court was passing on the witness' credibility. Instead, the establishment of a *prima facie* case merely allows the evidence to be presented to the jury, but the jury remains free to disbelieve the testimony.

ployment of airbags can cause facial burns by friction or abrasion.

Docket No. 44 at 6–7. Upon careful consideration of the evidence presented at trial, the Court concludes that this evidence could lead a reasonable jury to conclude that the deployment of the air bag in Ms. Collazo's car was the proximate cause of her facial burns.

Finally, the Court notes that Defendant's reply to the plaintiff's arguments misstates the law. The fact that much of the evidence presented by the plaintiff was her own testimony does not render such evidence "too conjectural and speculative for consideration by the jury." [9] The plaintiff's testimony was given in open court under oath and thus under penalty of perjury. It is Toyota that is inviting the Court to make credibility determinations, by arguing that her testimony should somehow be disregarded. To the contrary, the only proper way to deal with such evidence is to challenge its credibility, for example by pointing out to the jury that Ms. Collazo's testimony was self-serving and therefore potentially unreliable, or by otherwise impeaching the plaintiff. Although the defendant attempted to undermine her credibility, the jury believed Ms. Collazo, and this Court is now in no position to overturn that determination.

## C. Third Objection: The Verdict was Contrary to the Weight of the Evidence

Defendants also argue that the evidence presented at trial was not sufficient to permit a reasonable jury to conclude that the utility of the air bag in question was outweighed by the risks inherent to its use. Although the matter is a close one, the Court concludes that a reasonable jury could have found as the jury in this case did, that the risks of the air bag design outweighed its utility.

The crucial factor is that almost the only evidence before the jury as to the balance between the risks and utility of the challenged air bag design was the testimony provided by Toyota's expert witness, Mr.

Thomas O. Tiede. The plaintiff's evidence on the risks arising from the design of Toyota's air bag is slight. Viewing the evidence in the light most favorable to the plaintiff, she showed, at most, that the deployment of the air bag may have caused her some facial abrasions which, by the time of the trial (some two years after the accident) had become all but undetectable.[10] A reasonable jury could infer from this evidence that Ms. Collazo suffered some physical pain for some weeks or perhaps months, as well as some emotional pain for somewhat longer.

On the other side of the balance, the evidence presented by Toyota as to the benefits accruing from its air bag design was fairly extensive. Mr. Tiede testified that, in general, the use of air bags has reduced the number of deaths and serious bodily injuries resulting from vehicle accidents, by 14 percent and 18 percent, respectively. Furthermore, Mr. Tiede stated that the specific vehicle model in question, the Toyota Corolla, had surpassed federal crashworthiness criteria. Mr. Tiede also offered his opinion as an expert as to what injuries Ms. Collazo would have suffered if at the time of the accident, in which her car collided with several others at a 30 m.p.h. speed differential, Ms. Collazo had been wearing a seatbelt without the benefit of an air bag, or even without any restraints at all. Mr. Tiede opined that had she been wearing a seatbelt but not had an air bag, she would have suffered serious bodily injuries, such as facial bone fractures, loss of teeth, severe face trauma, related trauma to the head and chest area, as well as a high probability of spinal injury. Mr. Tiede also concluded that, if in addition to not having an air bag, Ms. Collazo had not been wearing her seatbelt, she would have suffered similar injuries but of greater severity, and furthermore would have been at a high risk of dying from these injuries.

Most important, however, Mr. Tiede also indicated that there is no alternative air bag design which would reduce the air bag's deployment speed while simultaneously providing the same protection from frontal injuries.

9. Docket No. 47 at 7.

10. A tiny facial freckle is the only vestige of the accident.

He explained that the speed of deployment obeys two different constraints: on the one hand, the force expended must be sufficient to cushion the driver's forward movement; on the other, the air bag must deflate quickly so as not to obstruct the driver, who may need to steer the vehicle to safety.

 As the Court discussed more extensively in its earlier order, under the risk-utility balancing prong, the plaintiff need only establish a prima facie case of causation; "[t]hat is, evidence must be adduced which would permit a jury to find that a design feature of the product was a proximate cause of the plaintiff's injury." Once plaintiff has made such a showing, the burden of proof shifts to the defendant. *Campbell v. General Motors Corp.*, 32 Cal.3d 112, 184 Cal.Rptr. 891, 895, 649 P.2d 224, 228. (1982). The defendant must then "prove, in light of the relevant factors discussed [below], that on balance the benefits of the challenged ·design outweigh the risk of danger inherent in such design." *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 239–40, 573 P.2d 443, 457–58 (1978). In evaluating the adequacy of a product's design pursuant to the risk-utility test, "a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Barker*, 573 P.2d at 455.

The jury in the case at hand returned a verdict for the plaintiff, finding that the Toyota Corolla's air bag system was defective under the risk-utility balancing test.[11] This verdict means that the jury found that the risks of injury arising from the air bag system's design outweighed the utility of that system. Upon review of the evidence before the jury, the Court concludes that a reasonable jury could have so found.

 Although the Federal Rules of Evidence do not explicitly state so, it is implicit in the interaction of Rules 103 and 702 through 705 that it is for the jury to determine the credibility of expert witnesses. After all, expert testimony is evidence like any other, and matters of fact are always for the jury. *International Adhesive Coating Co. v. Bolton Emerson International*, 851 F.2d 540 (1st Cir.1988); *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir.1985). *See also Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134 (3rd Cir.1983) ("[w]here there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge."); *Werth v. Makita Electrical Works, Ltd.*, 950 F.2d 643 (10th Cir.1991) (citing *Breidor*); *U.S. v. Coleman*, 501 F.2d 342, 346 (10th Cir.1974); *U.S. v. Varoz*, 740 F.2d 772, 775 (10th Cir.1984) (citing *Coleman*) ("[t]he weight and credibility of expert testimony are matters for the jury."); *Contractor Utility Sales Co., Inc., v. Certain–Teed Products Corp.*, 638 F.2d 1061, 1085 fn. 32 (7th Cir.1981) ("[a]lthough the court must decide questions of admissibility, the weight and credibility to be accorded to expert testimony are properly left to the jury.").

The problem is that the jury in this case apparently did not believe everything that Mr. Tiede said, or at the very least, what he said regarding the feasibility of alternative designs. A "jury is required to believe, and the judge may therefore accept as true on a motion, uncontradicted and unimpeached evidence from disinterested witnesses." 9A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 2527 at 286 (1995). But the key term here is "disinterested." Mr. Tiede cannot be considered disinterested because, aside from having been hired by Toyota to testify at trial as its expert witness, he had previously been employed by Toyota for seven years as an engineer in the company's Design and Technical Analysis Group, where his responsibilities included evaluating seat belt assemblies and other vehicle safety systems. A jury could reasonably consider Mr. Tiede's testimony to be

---

11. The jury found that the defendant was not liable on a theory of failure to warn. *Verdict Form*, Docket No. 36.

self-serving just as easily as it could Ms. Collazo's testimony. Indeed, the jury could have simply rejected Mr. Tiede's testimony. Therefore, that the jury chose to believe Ms. Collazo rather than Mr. Tiede is not a matter that this Court can nor should interfere with.

### D. Fourth Objection: Spoliation of Evidence

The defendant argues that the spoliation of the evidence crippled its ability to defend this case. This argument is rejected for the reasons already discussed in the order issued on July 30, 1996, at Docket No. 29.

### E. Fifth Objection: Inapplicability of the *Barker* Test to Puerto Rico Products Liability Actions

█ The Court need not tarry overlong on this particular argument. First, the defendant misses the point when it complains that the use of the second prong of the *Barker* test in this case was highly prejudicial to its case, because, unfortunately, whether or not the use of the *Barker* test was prejudicial to the defendant is simply not relevant to the Court's determination whether the test should be considered to be part of the law of Puerto Rico. Second, defendant's argument that the references to the *Barker* test in *Rivera Santana v. Superior Packaging*, 92 J.T.S. 165, —— P.R. Dec. —— 1992 WL 754830 (1992), were obiter dicta is beside the point because the Court has not denied that they were dicta. In the Opinion and Order at Docket No. 29, the Court did not claim that the *Barker* test *had been* adopted by the Supreme Court of Puerto Rico. Instead, the claim was that the Court had confidence in its prediction that the Puerto Rico Supreme Court *would* adopt the *Barker* test if a case presenting that issue came before that court. *See* Docket No. 29 at 6–10. As for the reasons why the Court was confident of its prediction, these are not limited to a mere numerical comparison of citations to case law. The point was that, in several cases, the Puerto Rico Supreme Court chose to follow California products liability cases that established doctrines that differed from those of the Restatement, Second, of Torts.

### F. Sixth Objection: Lack of Jurisdiction for Failure to Meet the Amount in Controversy Requirement

█ This objection is likewise denied. As with questions of domicile, the determination whether the amount in controversy requirement has been satisfied is made as of the moment when the suit was filed, rather than after the jury has rendered its verdict. Unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount, the case may not be dismissed. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). In the case at hand, the plaintiff's injuries could reasonably have been thought to justify an award of damages greater than fifty thousand dollars. The issue of the award of costs, pursuant to 28 U.S.C. § 1332(b), is discussed below.

### G. Seventh Objection: Damages Awarded to Plaintiff Should Be Reduced by the Appropriate ACAA Deduction

█ In the case at hand, the jury awarded the plaintiff damages in the amount of thirty thousand dollars ($30,000.00). The defendant now moves to have this amount reduced by the amounts provided by the Automobile Accident Compensation Act of Puerto Rico (ACAA). P.R. Laws Ann. tit. 9, § 2058 (Official translation 1976). The defendant specifically requests that three thousand dollars ($3,000.00) be deducted from the plaintiff's award, $1,000 for physical pain and mental anguish, and $2,000 for any other claim not related to physical pain and mental anguish. The defendant's request is partially granted and partially denied. Because the plaintiff's award seeks to compensate her for her physical pain and mental anguish, the Court orders that $1,000 be deducted from the award. In that regard, the plaintiff's argument that § 2058 is inapplicable to actions for strict products liability is meritless. However, defendant's request for the additional deduction of $2,000 dollars is denied, since the plaintiff did not plead damages other than physical pain and mental suffering.

When a prevailing party is finally adjudged to be entitled to recover less than fifty thousand dollars, 28 U.S.C. § 1332(b) permits a Court, in the exercise of its discretion, to deny a prevailing party the award of costs that such party would normally be entitled to pursuant to Fed.R.Civ.P. 54(d)(1), or even to award costs to the opposing party. In the case at hand, the Court does not find that the plaintiff litigated in anything less than good faith. Nevertheless, given that the case involved relatively minor injuries, that the jury's award was barely more than half of the minimum jurisdictional amount, and that even this award was further reduced by the ACAA deduction, the Court denies plaintiff the customary award of costs.

### III. Conclusion

For the reasons stated above, the Court **denies** defendant Toyota Motor Corp.'s motion for judgment after trial (Docket No. 40), except that the Court **grants** the request that plaintiff Diana Collazo's award of damages be reduced by one thousand dollars ($1,000.00) pursuant to P.R. Laws Ann. tit. 9, § 2058 (1976). Furthermore, the Court **denies** both parties' motions for awards of costs (Docket Nos. 38, 41).

IT IS SO ORDERED.